UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE MACK | ) | CASE NO. 1:04CV829 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | |
| MARGARET BRADSHAW, WARDEN, | ) | <u>MEMORANDUM OF OPINION</u> |
| | ) | <u>AND ORDER</u> |
| Respondent. | ) | |

This matter is before the court upon Clarence Mack's ("Mack") Motions to Expand the Record Under Rule 7 of the Rules Governing Section 2254 Cases (ECF 63) and for an Evidentiary Hearing. (Rule 8). (ECF 65). In addition to Mack's brief in support of his Motions, the court has considered Respondent Margaret Bradshaw's ("Bradshaw") Response in Opposition to the Motion for Evidentiary Hearing (ECF 69) and Mack's Reply. (ECF 70). Bradshaw responded that expansion of the record under Rule 7 of the Rules Governing Section 2254 Cases is appropriate. (ECF 68). For the following reasons, Mack's Motion for Evidentiary Hearing is granted in part and denied in part.

**FACTS**

On January 21, 1991, Peter Sanelli, a resident of Euclid, Ohio was murdered while

leaving his place of business. Mack, along with two other individuals, was arrested and later indicted for two aggravated murder counts as well as aggravated robbery. R.C.§§ 2903.01, 2911.01. Each murder count included a death penalty specification alleging murder during an aggravated robbery in violation of R.C. § 2929.04(A)(7). Count One of the Indictment charging Mack with purposely causing the death of Sanelli with prior calculation and design was eventually nolled. After considering the evidence, the jury found Mack guilty of aggravated murder and recommended the death penalty. The trial court agreed and sentenced Mack to death. On April 14, 2004, Mack completed his state court appeal process when the Ohio Supreme Court affirmed the appellate court decision denying his Motion to Reopen Direct Appeal. Subsequently, on December 15, 2004, Mack filed a Petition for Writ of Habeas Corpus asserting twenty-nine grounds for relief.

## EVIDENTIARY HEARING

Evidentiary hearings in federal habeas cases are governed by 28 U.S.C. § 2254(e)(2)which provides:

> 2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
>   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court cannot hold an evidentiary hearing on the claim unless the applicant satisfies the criteria set forth in the statute. A failure to develop the factual basis exists when there is a lack of diligence, or some

greater fault, attributable to the defendant or defendant's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence" for purposes of the opening clause of § 2254(e)(2) "requires that the defendant make a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id*. at 435, 437; *Bowling v. Parker*, 344 F.3d 487, 511 (6th Cir. 2003). Further, "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by law." *Id*. at 437. If the petitioner is diligent in developing the record, the district court may hold an evidentiary hearing. *Id.* at 433. *See Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003)(evidentiary hearings not mandatory, but are held at the discretion of the court). An evidentiary hearing is not required if allowing it would be futile. *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004). Where the record is complete and there is no fact that could be developed that would result in the granting of the writ, an evidentiary hearing is unwarranted. *Id*.

Even if the petitioner has been diligent in requesting an evidentiary hearing, the federal court need conduct a hearing only if the petitioner can demonstrate that (1) the grounds he alleges are sufficient to secure his release from custody, (2) relevant facts are in dispute, and (3) the state court did not provide a full and fair evidentiary hearing. *Apanovitch v. Houk*, 466 F.3rd 460, 476 (6th Cir. 2006); *see also Washington v. Renico,* 455 F.3d 722, 731 n. 4 (6th Cir. 2006). An evidentiary hearing is not required on issues that can be resolved by reference to the state-court record. *Fike v. Trombley,* 2008 WL 4279366 * 4 (E.D.Mich. Feb. 12, 2008)(citing *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994).

Mack seeks an evidentiary hearing on (1) his claim that the prosecutor unconstitutionally used peremptory challenges to exclude African-Americans from the jury in violation of *Batson v.*

-3-

*Kentucky,* 476 U.S. 79 (1986) (First Ground for Relief); (2) his claim that his trial counsel were ineffective (Fourth, Seventeenth and Eighteenth Grounds for Relief); and (3) his *Brady* claims (Fifth Ground for Relief). He has attempted to present all of these issues to the state court so the requirements of § 2254(e)(2) will not be considered.

### *Batson* Claim (First Ground for Relief)

In *Batson*, the United States Supreme Court held that the Equal Protection Clause precludes the prosecutor from challenging potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the state's case against a black defendant. *Id.* at 89. A three step process for assessing a claim of racial bias in peremptory challenges was established:

> a. The defendant must allege facts suggesting that purposeful discrimination has occurred. If he does so, he has made out a prima facie case of illegal discrimination;
> b. Once the defendant has made his prima facie case, the prosecutor "must articulate a race neutral explanation related to the particular case to be tried."
> c. The trial court then has the duty to determine if the defendant has established purposeful discrimination.

*Id.* at 96-98; *United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008).

Mack's claim for purposeful discrimination to exclude African-Americans involves three prospective jurors: 1) Theodore Griggs; 2) Christal Martin; and (3) Maralyn Wiley. The State used three of its four peremptory challenges in order to strike these three prospective jurors, all of whom were allegedly qualified and willing to serve.

This claim was raised in Mack's Rule 26(B) Application to Reopen Direct Appeal as part of an ineffective assistance of appellate counsel claim. *State v. Mack*, 2003 WL 21185786 * 3 (Ohio App. 8th Dist. May 19, 2003), *aff*., 101 Ohio St.3d 397 (2004). A claim raised in habeas corpus must first be presented to the state courts under the same theory in which it is later presented in federal

court. *Lott v. Coyle*, 261 F.3d 594, 607, 611, 617, 619 (6th Cir. 2001). Rule 26(B) does not preserve the underlying claims from default. Claims of ineffective assistance of appellate counsel are based on a different legal theory from the underlying claims. *Abshear v. Moore,* 546 F.Supp.2d 530, 541 (S.D.Ohio 2008)(citing *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)(ineffective assistance of appellate counsel claim under Rule 26(B) did not preserve habeas *Batso*n claim). Thus, this claim is procedurally defaulted.

Although the *Batson* claim has been procedurally defaulted, the court will consider it in ruling on the Petition. The court must consider the totality of the circumstances along with the *Batson* criteria to determine whether the record shows that the trial court adequately and reasonably conveyed its decision that the prosecutor's race-neutral explanation for excusing a juror was credible. *Braxton v. Gansheimer*, 561 F.3d 453, 462 (6th Cir. 2009). The complete transcript of the *voir dire* is in the record. Thus, the facts are before the court as well as the Petitioner's argument in support of the *Batson* claim enabling the court to examine the criteria set forth in *Batson*. Petitioner has not shown the existence of any new factual issues. Therefore, an evidentiary hearing on this issue is not necessary.

**Ineffective Assistance of Trial Counsel (Fourth, Seventeenth, Eighteenth Grounds for Relief)**

Mack asserts in his Petition that he was denied effective assistance of trial counsel during the *voir dire* phase of his trial, during the guilt phase and during the penalty phase of the proceedings. He requests an evidentiary hearing on the following issues:

> (a) The failure of trial counsel to conduct a constitutionally sufficient *voir dire* of prospective jurors, including the failure to conduct proper, thorough and meaningful questioning that would expose prospective jurors' biases and prejudices on issues important to the case, to wit, any racial biases or prejudices that might be aroused in

> a case where a poor black man is alleged to have killed a suburban white man with seven children, and any biases or prejudices concerning the imposition of the death penalty in general and/or in Mack's case in particular.
> (b) The failure of trial counsel to lay the trial-court's required foundation to impeach Timothy Willis and to ensure that Carole Mancino would be permitted to testify as to her conversation with Willis at the County Jail on May 2, 1991, and that Curtis Mack would be permitted to testify about his conversation with Willis on January 24, 1991.
> (c) The failure of trial counsel to obtain an independent ballistics test on the gun and bullet evidence.
> (d) The failure of trial counsel to conduct a reasonable investigation into the State's case in chief.
> (e) The failure of trial counsel during mitigation to: (i) conduct the necessary mitigation investigation, (ii) develop and present a coherent mitigation strategy, and (iii) present significant available mitigation evidence to the jury.

The failure of trial counsel to conduct a constitutionally sufficient *voir dire* of prospective jurors concerning bias (a) and trial counsels' failure during mitigation (e) were raised in Mack's Rule 26(B) Application and are procedurally defaulted. *Abshear,* 546 F.Supp.2d at 541. The alleged issues of failure concerning the impeachment of Timothy Willis and the alleged failure to ensure that Carole Mancino and Curtis Mack would be permitted to testify (b) were raised in post-conviction proceedings and were held by the court of appeals to be barred by *res judicata* because these issues could have been raised on direct appeal. *See Durr v. Mitchell*, 487 F.3d 423, 434-35 (6th Cir. 2007), cert. denied, 128 S.Ct. 1652 (2008)(claim that was not raised on direct appeal that could have been raised at that time is procedurally defaulted for purpose of federal habeas review). These issues are procedurally defaulted. Bradshaw admits that issues (c) and (d) were discussed by the Ohio court of appeals during post-conviction proceedings and are preserved for federal habeas review. *State v. Mack*, 2000 WL 1594117 * 3-5 (Ohio App. 8th Dist. Oct. 26, 2000).

> *A. Failure to Conduct a Constitutionally Sufficient Voir Dire of Prospective Jurors*

> The Ohio court of appeals addressed this issue in Mack's Rule 26(B) Application as follows:

-6-

> This court will first address the issue that trial counsel was deficient in conducting *voir dire* because he did not fully inquire whether the jurors were racially prejudiced and whether the jurors were predisposed to impose the death penalty; i.e., whether a juror believed that if the defendant was guilty of aggravated murder, he should automatically receive the death sentence, regardless of any mitigating evidence.
>
> Mr. Mack primarily relies upon *Turner v. Murray* (1986), 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27, *Morgan v. Illinois* (1992), 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 and *Mu'Min v. Virginia* (1991), 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493. *Turner* holds that a capital defendant accused of an interracial crime, upon his request, is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. In *Turner,* the trial judge had refused to permit such questions during *voir dire*.
>
> Similarly, in *Morgan* the Court ruled that a capital defendant upon request is entitled "to inquiry discerning those jurors who, even prior to the State's case in chief, had predetermined the terminating issue of his trial, that being whether to impose the death penalty." 504 U.S. at 736. Mr. Mack cites *Mu'Min* for the proposition that voir dire must cover certain subjects. However, in this pretrial publicity case, the Court's holding was that a trial court's findings of juror impartiality may be overturned only for manifest error.
>
> First, this court notes that Mr. Mack seeks a substantial expansion of the law. The Court ruled that due process requires a trial court to allow questioning on racial prejudice and predisposition regarding the death penalty. However, Mr. Mack argues that trial counsel must ask each venireman whether he or she is racially prejudiced and whether he or she would automatically impose the death penalty. Under the principles that an appellate counsel is not deficient for not raising issues in a changing area of the law, Mr. Mack's appellate counsel had no duty to argue for an expansion of the law. Specifically, as to racial prejudice, the majority in *Turner* and Justices Powell and Rehnquist in their dissent note the potential danger in inquiring about racial prejudice; namely, that the jurors may conclude that race is somehow relevant to the case.

*State v. Mack*, 2003 WL 21185786 at 6 -7 (Ohio App. 8th Dist. May 19, 2003). The decision involved ineffective assistance of appellate counsel, not the performance of trial counsel. As previously stated, the court will consider procedurally defaulted claims in ruling on the Petition. Mack has not explained why nor has pointed to anything in the expanded record to show he is entitled to a hearing on this issue. The record and argument by way of briefs are sufficient to enable the court to determine this issue.

*B. Failure of Trial Counsel to Impeach a Witness and to Ensure That two Other Witnesses Would Testify*

On direct appeal, the Ohio Supreme Court, in determining that the trial court abused its discretion by refusing to allow the defense to introduce evidence of prior inconsistent statements, stated:

> Carole Mancino's proffered testimony also states that during their conversation, Willis said he didn't think he had seen Clarence Mack on the murder date. We hold that this portion of Mancino's proffered testimony was properly excluded because appellant failed to lay a proper foundation for its admission under Evid.R. 613(B). "When extrinsic evidence of a prior inconsistent statement * * * is offered into evidence pursuant to Evid.R. 613(B), a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." *State v. Theuring* (1988), 46 Ohio App.3d 152, 155, 546 N.E.2d 436, 439. By examining the record, we find that Willis was never specifically asked if he had told Carole Mancino that he had not seen appellant on the day of Sanelli's murder. Willis was asked on the stand if he told Mancino that Clarence Mack had visited him at his home on the murder day. Because Willis was never specifically asked about this statement on the stand, no foundation was laid for its introduction into evidence.
>
> Carole Mancino also proffered that during their conversation, Willis had denied calling the police. During his trial testimony, Willis stated that he did not remember if he had made this statement to Mancino. While we find that Mancino's testimony to impeach Willis's ambiguous answer should have been admitted by the trial court, we also find that the trial court's exclusion of this testimony did little to prejudice Clarence Mack. There was an abundance of other credible inculpatory evidence even if the jury were to conclude that Willis did not call the police.
>
> The statements made by Willis to Curtis Mack were also inadmissible extrinsic evidence because appellant failed to lay a proper foundation for their admission. Curtis Mack claimed that Willis had admitted murdering Peter Sanelli. Appellant, however, never asked Willis during the trial whether he had ever made this statement to Curtis Mack. Thus, a proper foundation was not laid for admission of the extrinsic evidence. We, therefore, reject appellant's tenth proposition of law.

*State v. Mack*, 73 Ohio St.3d 502, 514-515 (1995). Although this issue was procedurally defaulted,

-8-

the court will consider it in ruling on the habeas action. It appears that important testimony may have been ruled inadmissible. But the facts are in the record. Mack has not explained how an evidentiary hearing on this issue would help the court. Therefore, the court finds a hearing on this issue unnecessary

### *C. Failure to Obtain a Ballistic Test*

Mack wants an evidentiary hearing on whether his counsel should have obtained a ballistic test on the gun and the bullet evidence. The evidence showed that the shell casing recovered from the scene of the murder came from the gun confiscated from Mack. The fact that Mack's mother carved his initials in another gun that was not introduced at trial would not tend to show reasonable doubt as to whether the gun introduced at trial was in fact Mack's gun. That gun matched the shell casings taken from the scene of the murder and Mack had possession of that gun. It appears that Mack had fired a gun. Mack has not pointed out what newly discovered evidence requires a hearing on this issue.

### *D. Failure of Trial Counsel to Conduct a Reasonable Investigation.*

This issue concerns Mack's claim that Mack's counsel should have investigated several witnesses who could testify that witness Timothy Willis lied during his testimony about seeing Mack after the shooting. Willis claimed that he saw Mack in the victim's car shortly after the shooting. He said he knew this because he was walking home from the Fairfax Recreational Center with his daughter, after she attended an event there. Mack contends that this could not be true. Had they properly investigated, defense counsel would have learned of at least four witnesses who would have called into question Willis's credibility on certain details and one witness who would have allegedly provided him with an alibi (i.e., Mike Carrington, Gerald Kates, William Payne and Mack's mother

and uncle). Carrington would have testified that he saw Willis driving a car matching the victim's car the night of the shooting. He would also have testified that he saw Clarence in his mother's car the night of the shooting, and therefore he could not have been in the victim's car. Tr. Vol. 3, pg. 971. John Mack and Bernice Mack were not only mitigation witnesses but were alibi witnesses who could have testified as to Clarence's whereabouts at the time of the crime. William Payne would have testified that he talked to Clarence on the phone around the time of the crime. Gerald Kates would have testified that the Fairfax Recreation Center was closed on the date of the murder because of MLK day. (See PCR Petition, and affidavits and exhibits thereto).

> The Ohio court of appeals ruled in post-conviction proceedings as follows:
>
> Defendant also asserts the ineffective assistance of counsel when his trial counsel did not call as witnesses five individuals, i.e., Mike Carrington, Gerald Kates, William Payne and defendant's mother and uncle. Defendant does not aver that trial counsel failed to find or interview most of these witnesses, but instead contends that they should have been called to testify at trial. This claim is also without merit.
>
> Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. *State v. Coulter* (1992), 75 Ohio App.3d 219,230. The mere failure to subpoena witnesses for trial is not a substantial violation of defense counsel's essential duty absent a showing of prejudice. *Id* at 230; *State v. Hunt* (1984), 20 Ohio App.3d 310,312; *State v. Mitts* (September 28, 2000), Cuyahoga App. No. 76963, unreported.
>
> In this case, defendant has not demonstrated prejudice. A review of the affidavits does not reveal that counsel was deficient in choosing not to call them and, had they been called, the outcome of the trial would have been different. In fact, the affidavits indicate that if the witnesses had been called, they would have only added confusion and implausibility to the defense strategy.
>
> First, Mike Carrington could very well have seen defendant at 6:30 p.m. the day of the murder driving a Lincoln Continental. Testimony at trial revealed the murder occurred sometime between 5:45 p.m. and 6:10 p.m. Carrington also stated that defendant purchased the gun the day after the murder from Willis. This actually contradicted defendant's own version where he stated he bought the gun a few days prior to the murder, first from an unknown person and then from a man named Dee. Carrington's testimony would have discredited defendant's version. His affidavit states that he met with trial counsel and told them of this information. It is entirely fair to state that it was a matter of trial strategy not to put Carrington on the stand.

-10-

> Second, Gerald Kates' affidavit reveals that the center from which Willis allegedly walked his daughter home the day of the murder was actually closed. The information that the center was closed was available at trial and could have been raised without resort to evidence outside the original record. Hence, this affidavit is barred by the doctrine of res judicata. See *Cole, supra.*
>
> Third, trial counsel interviewed defendant's mother, Bernice Alford, and chose not to call her as well. Her affidavit details that she carved defendant's initials on the gun but the gun introduced at trial did not have the initials on it. She also averred that the police, during a search of defendant's room, planted evidence. Again, the implausibility of this explanation counseled against calling defendant's mother as a matter of trial strategy. Trial counsel was in the best position to determine the veracity of the witnesses who would actually help, not hurt, the defense.
>
> Fourth, William Payne's affidavit states that he phoned defendant at about 5:00 p.m. on the day of the murder and then again a short time later. While this may have been true, the murder occurred after 5:00 p.m., but before 6:10 p.m. Again, this would not have helped the defense.
>
> Finally, John Mack, defendant's uncle, essentially corroborated Bernice Alford's statement that during jail visits with co-defendant Germany, Germany stated defendant was not involved. This is hearsay, going to the truth of the matter asserted, and would not have been admissible at trial.
> Assignment of Error I is overruled.

*State v. Mack*, 2003 WL 1594117 at * 4 -5, *app. not allowed*, 91 Ohio St.3d 1459 (2001).

Mack alleges that these witnesses may have had information not brought out at Mack's trial. The court finds that had defense counsel investigated these witnesses about Mack's whereabouts at the time of the murder the outcome of the trial may have been different. Counsel may have been ineffective in not knowing of their existence or failing to interview them. Of course, if a proper investigation had been performed, using them as witnesses at trial could be a matter of trial strategy. Thus, an evidentiary hearing is required on this issue.

*E. Failure of Trial Counsel During Mitigation to Properly Investigate, Develop a Coherent Mitigation Strategy and Present Significant Mitigation Evidence*

The Supreme Court, in *Rompilla v. Beard*, 545 U.S. 374 n. 7 (2005) and *Wiggins v. Smith*, 539 U.S. 510, 524 (2003), has unequivocally declared that a thorough and complete mitigation

-11-

investigation is absolutely necessary in capital cases. The Sixth Circuit uses the ABA Guidelines adopted in 2003. *Dickerson v. Bagley*, 453 F.3d 690, 694 (6th Cir. 2006) (citing *Hamblin v. Mitchell*, 354 F.3d 482, 485-88 (6th Cir. 2003)). The ABA Guidelines provide that penalty phase preparation requires extensive investigation into personal and family history, anything in the life of the defendant which might mitigate against the appropriateness of the death penalty. The investigation should begin with the moment of conception and should include medical history, family and social history, educational history and employment and training history. According to the ABA Guidelines, it is necessary to locate and interview the defendant's family members and virtually anyone else who knew the defendant and his family, including neighbors, teachers, clergy, case workers, doctors, correctional, probation, or parole officers and others. Also records from courts, government agencies, the military and employers should be requested. ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ¶ 10.7 (2003), pgs. 80-83. A partial, but incomplete mitigation investigation does not satisfy the requirements of *Strickland. v. Washington*, 466 U.S. 668 (1984). *Dickerson,* 453 F.3d at 694. A strategic decision not to perform a complete investigation is inadequate when a full investigation would have revealed extensive mitigation evidence *Id*. at 696. An investigation must be performed if the investigator does not know the relevant facts that the investigation would uncover. *Id.* In evaluating the reasonableness of an attorney's investigation, the court must consider the amount of evidence already known to counsel as well as whether the known evidence would lead a reasonable attorney to investigate further. *Jells v. Mitchell*, 2008 WL 3823058 * 9 (6th Cir. Aug. 18, 2008).

A strategic decision to pursue or not to pursue a particular trial tactic "after thorough investigation of law and facts," is "virtually unchallengeable." *Clark v. Mitchell* 425 F.3d 270, 286

(6th Cir. 2005). The court must determine whether the investigation supporting counsel's decision whether or not to introduce evidence was reasonable. *Id.* at 284; *Wiggins*, 539 U.S. at 523 (quoting *Strickland,* 466 U.S. at 690-91). Reasonableness is assessed by considering the quantity of evidence known to counsel, as well as whether that evidence should have led a reasonable attorney to investigate further. *Id.* at 527; *Clark*, 425 F.3d at 284.

Even if counsel were ineffective, Mack must show that he suffered prejudice. Prejudice exists where the new evidence that a habeas petitioner presents differs in a substantial way-in strength and subject matter-from the evidence actually presented at sentencing. *Hill v. Mitchell,* 400 F.3d 308, 319 (6th Cir. 2005).

Mack's attorney, Paul Mancino, testified during the discovery deposition now part of the record, that he had no assistance from any mitigation specialist or other experts. Vol. III, Dep. pg. 62. He did not know whether he attempted to get school records, hospital records, medical records or any other records concerning Mack, his family or his social history. Vol. III, Dep. pg. 63. Only family members were interviewed. Vol. III, Dep. pg. 64. Dr. Robert Smith, a clinical psychologist, submitted a report wherein he stated that Mack, at the time of the offense, suffered from "longstanding form of depression, Dysthymia and the negative effects of significant early childhood trauma. Report of Dr. Robert L. Smith, Expanded Record Vol. I, pg. 2. Mancino admitted that he probably did not begin his mitigation investigation until after the guilty verdict because he thought that Mack would lose confidence if he prepared for the penalty case before the guilt phase was completed. Dep Vol. III, pg. 66. The court finds that an evidentiary hearing should be held on this issue.

*Brady* Claims (Fifth Ground for Relief)

Mack contends that he is entitled to an evidentiary hearing pertaining to alleged material and exculpatory information allegedly withheld by the state including the following:

> The State did not provide the defense with the statements of Timothy Willis, the state's only witness to connect Mack to the crime. Willis called Crime Stoppers at least twice (T. 365, 685, 698, 728), and he gave a statement to the Sanelli family which was disclosed to the police in a phone call with them, but not to Mack or his counsel. (T. 488, 484). He also gave at least one statement to the police (T. 599), and perhaps others.
> The State did not provide the defense with notes of interviews, conferences and/or meetings with Willis concerning his testimony.
> The State did not provide the defense with the notes made by the Sanelli family during their January 22, 1991, meeting with Willis (T. 479), and perhaps other meetings at which Willis provided information.
> The State did nor disclose to the defense whether the State or any of its agents had made any implicit or explicit agreements or arrangements with Timothy Willis about the testimony he would provide against the three co-defendants (including Mack) that were charged with Peter Sanelli's murder, including whether Willis's cooperation and testimony in said case would be considered at all by the State in connection with the State's further handling of the criminal charges that were brought against Willis in Case No. CR 266677 involving victim Robert Burgess, and whether there had been any discussions or communications with Willis about any such matters.
> The State never released the statement Mr. Lekas gave to the police. (T. 457).
> The State failed to release Detective Norman Sherwood's report pertaining to his January 25, 1991, interview of Ms. Demill Blue. (T. 996-98). It is clear that only a portion of the report was released. (T. 1000).
> The State also withheld the name Gerry Kirkland from the defense. Kirkland testified during co-defendant Sowell's trial about what he saw on Holton Avenue, the place where the victim's car was found. (T. 1339). The testimony of Kirkland is exculpatory and therefore the prosecutor should have turned this name over to the defense.
> The State failed disclose that Willis was receiving monetary awards from the Sanelli family for testifying and also failed to disclose any other deals or arrangements it had with him.

Mack raised a *Brady* claim in his appeal to the Ohio Supreme Court concerning the award from the Sanelli family for testifying. In proposition of law 1, he asserted that he should have been provided discovery of witness statements found in police reports. Apx. Vol. 4, pgs. 69-70. *Brady* was not involved in the latter claim. Therefore, the claim pertaining to the failure to disclose witness

-14-

statements is procedurally defaulted. Although this claim has been procedurally defaulted, the court will consider it in ruling on the Petition.

The prosecutor's duty to disclose includes impeachment evidence, exculpatory evidence, and evidence known only to police investigators. *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). A *Brady* violation requires proof that: (1) the evidence in question was favorable to the defendant; (2) the evidence was suppressed by the state; and (3) the defendant was prejudiced by the suppression. *Id.* 527 U.S. at 281-282; *Bell v. Bell*, 512 F.3d 223, 240 (6th Cir. 2008).

The fact that Willis might have been receiving a monetary award for testifying that might have been contingent on a conviction may be *Brady* material that should have been disclosed. Mack is entitled to an evidentiary hearing on this issue regarding whether such an award was offered and whether the State knew about it.

The expanded record includes police reports containing inconsistencies about what happened the night of the crime. A police report states that a phone call was received from Witness Timothy Willis who said that Tom Sowell "SHOT THE GUY THAT HAS THE GLASS STORE." Exp. Vol. I Tab B, Vol. II Tab D, pg. 000300. In a written statement Willis again stated that Sowell shot the victim. Vol. II Tab D, pg. 000365. At trial, Willis testified that Mack told him that he also shot. These statements, allegedly not given to Mack, may have helped him. An evidentiary hearing should be held to determine whether a *Brady* violation occurred.

In addition, Willis had been indicted for robbery. After Mack's trial the State dismissed his case. Mack is entitled to know whether Willis was given consideration for testifying against Mack.

Accordingly, Mack's Motion to Expand the Record Under Rule 7 of the Rules Governing Section 2254 Cases is granted. (ECF 63). His Motion for Evidentiary Hearing is granted in part and

denied in part as follows: an evidentiary hearing will be held on Mack's claim of ineffective assistance of counsel concerning failure to conduct a reasonable investigation (d), failure during mitigation to properly investigate (e) and the *Brady* claim in accordance with the court's discussion. The Motion for Evidentiary hearing is denied as to the remaining requests. The court will hold a telephonic conference with counsel for the parties in the within case on April 12, 2010, at 2:00 p.m. to set a date and framework for the evidentiary hearing.

      IT IS SO ORDERED.

                                              **/s/SOLOMON OLIVER, JR.**
                                              UNITED STATES DISTRICT JUDGE

March 31, 2010